ORIENTAL HOTEL COMPANY ET AL. V. JOHN
GRIFFITHS ET AL.

No. 300.

**1. Mechanic's Lien—Statute Construed.**

Article 3179, Revised Statutes, provides: "All liens for work and labor done or things furnished as specified in this act shall be upon an equal footing, without reference to the date of filing the account or lien; and in all cases where a sale shall be ordered and the property sold, * * * the proceeds arising from such sale, if not sufficient to discharge all the liens against the same, without reference to the date of filing the account or lien, shall be

paid pro rata on the respective liens." This gives each lien holder his pro rata right in the proceeds of a foreclosure of a mechanic's lien........... 580

**2. Words of Preference in a Deed of Trust.**

In a deed of trust to secure bonds issued by a hotel company, it was expressly stated, that "said mortgage to constitute a first and paramount lien on said property." The mortgage disclosed, that the loan was for the purpose of completing buildings to be erected upon the mortgaged property. *Held*, that mechanic's lien holders were not affected by such expressed intent. They were not parties to the agreement, and their rights were founded in the laws of the land ................................................. 581

**3. Laws of the Land as Affecting Contracts.**

The parties to the deed of trust, which showed that buildings were to be erected upon the land conveyed in trust, contracted with reference to and in view of the law as it then existed, and they are chargeable with notice of such rights as might arise in the construction of such buildings.... 581, 582

**4. Mortgagee Charged with Notice.**

One taking a mortgage upon land upon which buildings are in course of construction, does so with knowledge that it may be necessary for the completion of the building that other contracts for material or labor should be made ...................................................... 582

**5. Inception of the Lien.**

In the existing law a lien or mortgage existing at *the inception* of the mechanic's lien is protected. Contract liens after the inception are subordinate to the statutory liens. Laws of 1889, chapter 98, section 8, page 112, carried into late revision—article 3301................................ 583

**6. Contract Liens Controlled by Statute.**

As there is perfect equality of rights among mechanic's lien holders, the existence of a lien in favor of one will establish the lien of subsequent laborers or materialmen, although a mortgage had been executed upon the property before such subsequent lien holders performed any act of labor or towards furnishing material ................................................. 583

**7. Inception.**

The word "inception" means *initial stage*. It does not refer to a state of actual existence, but to a condition of things or circumstances from which the thing may develop; e. g., when buildings have been projected and construction entered upon ................................................ 583

**8. Construction of Statute.**

The construction, that when the erection of any building is begun, that constitutes the inception of all subsequent liens, is consistent with the entire body of the statute laws of the State on the subject—preserving the equality of all those who contribute to the construction of the building, and affords an easy solution and just result in case of intervening liens ............. 585

**9. Case in Judgment.**

The Oriental Hotel Company had a contract with G. for the erection of a hotel building. Work upon the foundation had progressed, when the company executed a mortgage upon the lots and the building in process of construction, to secure an issue of bonds to raise funds for completion of the building. Subsequently to the record of the mortgage, other contractors and materialmen contributed to its completion, and claimed liens under the statute. The mortgage on its face declared it to be a first lien. *Held*, that statutory lien holders all had priority over the mortgage, and were entitled to a decree ordering sale of the lots and building; the proceeds, if insufficient to pay, to be divided pro rata among them.....................585, 586

ERROR to Court of Civil Appeals for Fifth District, in an appeal from Dallas County.

The opinion gives a sufficient statement.

*Watts, Aldridge & Eckford* and *Barry & Ethridge*, for plaintiffs in error.

*Coke & Coke*, for defendants in error John Griffiths, Baker & Smith, and Eaton & Smith Company.

*Cobb & Avery*, for defendant in error Wallace De Wolfe.

The principal matters discussed in the briefs of counsel are not specially passed upon in the opinion.

BROWN, ASSOCIATE JUSTICE.—The Oriental Hotel Company, a corporation organized under the laws of Texas, owned a block of ground in the city of Dallas, and had entered upon the work of excavating and putting in the basement of a hotel building thereon. On the 6th of February, 1890, the said hotel company submitted a proposition, in writing, to the St. Louis Trust Company, of St. Louis, Mo., in which it was stated, that the said hotel company proposed to issue $250,000 first mortgage bonds on the hotel building and ground, to raise money for the purpose of completing the said building. Accompanying the proposition were the specifications and plans, prepared by the architect, for the building then in course of erection, and thereafter to be completed. The bonds were to be issued May 1, 1890, at a rate of interest to be agreed upon. The trust company was to receive and sell the bonds, and act as trustee under the deed of trust or mortgage to be given to secure the bonds.

On the 15th day of February, 1890, Adolphus Busch, F. Herrold, Marquard Forster, Augustus Gehner, and Mrs. Joseph Schneider submitted to the trust company a written proposition to take the bonds, which proposition was in these words: "We, undersigned, agree to take bonds of Oriental Hotel Company, of Dallas, Texas, on proposition as made, provided we get a bond, as suggested, making them beyond all controversy a first lien upon property when fully completed in all details; such bonds to bear 7 per cent interest, payable semiannually at St. Louis, Mo.; amount of issue to be $250,000, and stockholders to expend, with realty, at least $250,000 before any of our money is used." The bonds were sold to the parties making the proposition, and thereafter, on May 1, 1890, they were delivered, and the deed of trust given in accordance with the proposition, which was duly recorded, May 20, 1890, in the records of Dallas County. The deed of trust was in the usual form of such instruments, and conveyed to the St. Louis Trust Company all the franchises, rights, and privileges of the Oriental Hotel Company, the lot or block of land upon

which the building was to be erected, "together with all the improvements thereon, or that thereafter may be placed thereon." And the said deed of trust contained a provision binding the said hotel company to pay and discharge all taxes and assessments of every kind and description imposed upon the property mortgaged, free and clear of any lien or incumbrance by reason thereof. In the resolution adopted by the stockholders authorizing the board of directors to make such mortgage, which resolution is copied into the deed of trust, it is provided, that "said mortgage to constitute a first and paramount lien on said property."

On the 30th day of April, 1890, the Oriental Hotel Company entered into a written contract with the trustee aforesaid, in which it was recited, that the bonds of the said company were subscribed for with the understanding that the building should be completed in accordance with the plans and specifications mentioned and described in the proposition made by the company to the trustee, and that the bonds should be lawfully authorized and issued ready for delivery, secured by mortgage or deed of trust, to the satisfaction of the proposed purchasers, and properly recorded, and abstract of title furnished, showing the said deed of trust to be the first and only lien; the money for the bonds to be paid by the subscribers to the said trust company; the money so paid not to be paid out by the trustee on said building until the Oriental Hotel Company shall have expended as much as $250,000 upon said hotel, including the cost of the real estate on which said hotel is located, and the amount already expended; the building and premises to be kept free and clear from any and all liens whatsoever, except the lien under the said deed of trust, in which case the trust company was to pay out the money paid in for the bonds for the completion of the said building, as the work progressed, upon the estimates of the architect and superintendent of construction of the said building.

On the same day, the 30th of April, 1890, the Oriental Hotel Company, as principal, and Thomas Field and Frank Field, as sureties, entered into a bond, payable to the St. Louis Trust Company, conditioned, that if the Oriental Hotel, then in the course of construction in the city of Dallas, should not be in all respects fully completed and ready for occupancy, free from all liens and charges whatsoever, except the deed of trust to secure the said bonds, that they, the said principal and sureties, would, within sixty days after the expenditure of the $250,000 obtained by the sale of the bonds, pay to the said St. Louis Trust Company, for the benefit of the bondholders, a sum of money which would be sufficient to complete the hotel building and discharge the same from all liens and charges, except the deed of trust.

During the time of the negotiations between the Oriental Hotel Company and the St. Louis Trust Company for the sale of the bonds, John Griffiths was negotiating with the hotel company a contract for

the erection of the hotel building. Griffiths knew of the proposition to sell the bonds through the trust company, and before closing his contract with the Oriental Hotel Company, inquired of the trust company as to the probability of completing the sale. Upon being informed that the bonds had been subscribed for by responsible parties, he entered into a contract with the hotel company, on the 28th day of February, 1890, to erect and construct the said building, in accordance with the plans and specifications, for the sum of $315,000, and soon thereafter entered upon the work of constructing the said building, in accordance with the contract. The building was accepted by the architect and by the hotel company as having been completed in accordance with the contract. The hotel company failed to make the last payment due upon the said building, amounting to ——. Griffiths filed his contract in due time and form to secure a mechanic's lien upon the said building and grounds.

At different dates, which are not material, the Western Electric Company (which transferred its claim to defendant in error De Wolfe), Baker & Smith Company, Eaton & Prince Company, and W. H. Spellman, each furnished material and performed labor in the construction of the said hotel building of the Oriental Hotel Company, after the execution and record of the deed of trust given by the said hotel company to the St. Louis Trust Company. The claim of each of the said parties was duly filed and recorded within the proper time and manner to secure a lien upon the said building and premises.

W. H. Spellman brought suit against the Oriental Hotel Company upon his claim, and foreclosed his mechanic's lien upon the premises, including the building. Under the judgment of the District Court in that case the property was sold, and W. G. Neiman purchased it for $250. None of the other claimants of liens were made parties to this proceeding.

The St. Louis Trust Company sold the property under the deed of trust given to it by the Oriental Hotel Company, and it was bought in by the Oriental Investment Company. Both of these sales were made after the liens in favor of the defendants in error had been fixed according to law. The sale under the judgment in favor of Spellman, and under the deed of trust, were regular, and sufficient to convey title as against the hotel company.

The Oriental Investment Company, by special answer, claimed title to the property under the sale by virtue of the judgment in favor of Spellman; and also under the sale made by the St. Louis Trust Company under the deed of trust. The plaintiffs excepted to this portion of the answer, which exceptions were sustained by the court.

Separate suits were brought in the District Court against the Oriental Hotel Company in favor of the different plaintiffs in this suit, to recover their debts and foreclose the mechanic's liens. All of these suits were consolidated in the District Court, and, thus consolidated, constitute the case now before us.

There was a trial in the District Court, and judgment in favor of the plaintiffs for their several amounts, with foreclosure of their liens and order of sale, from which judgment the defendants appealed to the Court of Civil Appeals of the Fifth District, which affirmed the judgment of the District Court.

The plaintiffs in error assigned the following grounds, in substance, upon which they seek a review and reversal of the judgment of the Court of Civil Appeals:

1. That the court erred in sustaining exceptions to the defendant's answer, setting up title under the judgment rendered in favor of Spellman, and sale thereunder.

2. That the court erred in sustaining exceptions to that portion of the defendant's answer which set up title acquired under the sale by the St. Louis Trust Company, by virtue of the deed of trust given by the Oriental Hotel Company.

3. That the judgment of the court foreclosing the lien of the plaintiffs, except Griffiths, upon a part of the building, situated upon the lots described, is erroneous.

4. That by the terms of the mortgage it had a first and paramount lien upon the property, and the court erred in decreeing priority of lien in favor of the plaintiffs, over the claim of the Oriental Investment Company, the purchaser under said deed of trust.

5. That the court erred in refusing the special charge asked by the defendant, submitting to the jury the question as to whether or not Griffiths was estopped to assert his claim of priority of lien against the deed of trust to the St. Louis Trust Company.

6. That the court erred in excluding evidence offered by the defendant to show that Griffiths had not completed his work according to the contract.

7. Upon the trial, the defendants tendered to John Griffiths, in open court, $5000 of the capital stock of the Oriental Hotel Company, which he declined to receive, and the court refused to compel him to accept, but instructed the jury to find for Griffiths for the amount of his claim, without deducting the $5000 in stock so tendered. This action of the court was assigned as error.

We have carefully examined the record in this cause, and find no error in the judgment of the Court of Civil Appeals upon any points set up in the petition for writ of error, except that specified in the third ground. We shall, therefore, not discuss any other question in the case, as the opinion of the Court of Civil Appeals, as we think, clearly expresses the law applicable to the rights of the parties.

By the judgment of the District Court, which was affirmed by the Court of Civil Appeals, the mechanic's lien of John Griffiths was foreclosed on all of the property described in the petition, including the lands and improvements thereon, and the mechanics' liens of Eaton & Prince Company, Baker & Smith Company, Wallace L. De Wolfe, and W. G. Neiman were foreclosed on all of said property, "save and

except the land and basement and foundation of the said hotel build-
ing," which liens were declared to be superior and paramount to the
lien of any other party to the suit. The judgment directed that the
clerk issue an order of sale to the sheriff or any constable of Dallas
County, commanding him to sell the property in satisfaction of the
judgment, and that he sell the lands and the basement and foundation
of said hotel building separately from the balance of said hotel build-
ing, applying the proceeds arising from the sale of "the land and
basement and foundation of the building" to the satisfaction of
the judgment in favor of John Griffiths; if any surplus remain
after paying the judgment of John Griffiths, that it be paid to
the Oriental Investment Company; and that he apply the proceeds
arising from the sale of the balance of the said hotel building in satis-
faction of the judgments in favor of the Eaton & Prince Company, the
Baker & Smith Company, Wallace L. De Wolfe, and W. G. Nieman,
and to payment of any balance which may remain unpaid on said
judgment in favor of John Griffiths, in case his judgment had not been
satisfied out of the proceeds of the "sale of the land and the basement
and foundation of the said building;" and if the proceeds realized
from the sale of said property, except "the land and basement and
foundation," be not sufficient to pay and discharge all said judgments,
including the balance due on said Griffiths judgment, then said judg-
ments and the balance of said Griffiths judgment shall be paid pro
rata; if any surplus remain after paying all of the said judgments in
full, the same to be paid to the Oriental Investment Company. In
case the proceeds arising from said sale shall not be sufficient to pay
all of said judgments in full, the respective plaintiffs to have execution
against the defendant, the Oriental Hotel Company, for the collection
of such balance.

Article 3179 of the Revised Statutes provides: "All liens for work
and labor done or things furnished, as specified in this act, shall be
upon an equal footing, without reference to the date of filing the
account or lien; and in all cases where a sale shall be ordered and the
property sold, which may be described in any account or lien, the pro-
ceeds arising from such sale, if not sufficient to discharge all the liens
against the same, without reference to the date of filing the
account or lien, shall be paid pro rata on the respective liens." It
will be seen, that if we disregard the deed of trust made by the hotel
company to the St. Louis Trust Company, all of the plaintiffs in this
case would have participated equally with John Griffiths in the pro-
ceeds of the sale of the land, the foundation, and the basement of the
hotel building. By the judgment entered, the plaintiffs, except John
Griffiths, were denied the right of participation in the proceeds of the
sale of such land, foundation, and basement, which could only be
affected in case some superior right had intervened between the right
of John Griffiths and the other plaintiffs.

In order, therefore, for us to decide upon the correctness of the judgment entered, we must determine as to the priority of the deed of trust over the liens of those plaintiffs who did work or furnished material under contracts entered into with the hotel company subsequent to the date of the deed of trust. It is claimed by the Oriental Investment Company, the purchaser under the deed of trust, that the said deed of trust held a prior and first lien upon the land and building, so far as then constructed and as it was to be thereafter completed, from the date of the making and recording of the said deed of trust, as against all claims arising thereafter out of the construction of the said building. This claim is based upon the language of a resolution of the board of directors of the hotel company, embodied in and made a part of the deed of trust. If the legal effect of the deed of trust would have been to give such prior lien, without expressing it in the instrument, then the use of the language was wholly unnecessary, and conferred no right that would not have existed. If, on the other hand, the deed of trust, without the use of this language, would not have created such prior and paramount lien as against subsequent mechanics' liens, then the use of that language could not affect the rights of persons who were not parties thereto, and whose liens had their foundation in the laws of the State, and were not dependent upon contracts between the parties with reference thereto. It follows, therefore, that a proper consideration of the rights of the parties and the question involved demands that the language relied upon should be disregarded, and that the legal effect of the instrument should alone be considered.

The proposition made by the hotel company to the trust company, the deed of trust, and the bond given by the hotel company to the trust company, show that the erection of the hotel building had been begun, and its continuance to completion was fully contemplated by the parties. Specifications of the work to be done accompanied the proposition, and the proposition upon which the deed of trust itself was based provided, that the money received from sale of the bonds should remain in the hands of the trust company, to be paid out by it to persons who might furnish material or perform labor in the prosecution of the work; and the bond given by the hotel company to the trust company provided, that in case any liens created upon the said building should not be discharged within sixty days after the expenditure of the $250,000 procured by the sale of the bonds, then the hotel company should furnish sufficient funds to discharge such liens. The facts clearly indicate, that the parties at the time of making the trust deed understood that liens superior to the lien of that instrument might accrue thereafter, and carefully provided for protection against them. The law in force in Texas at that time gave to all persons who might furnish material, fixtures, or tools, or who might labor in the construction of the said building, a lien upon the lands and the building to secure payment therefor. The parties contracted with reference

to and in view of the law as it then existed, and must be charged with notice of such rights as might accrue in the course of constructing the building, even if they had not been actually contemplated by the parties. Brooks v. Railway, 101 U. S., 451.

When a building or other improvement is in course of construction, and any person takes a mortgage on the land upon which such building or improvement is situated, or on the improvement itself, he does so with the knowledge that it may be necessary for the completion of the building that other contracts should be made for labor and material, and it is clearly the policy of this State, as shown by its statute law, that an intervening mortgage shall not destroy the statutory rights of persons that may be acquired thereafter in the course of constructing such building. The deed of trust in this case expressly reserved a lien upon the building thereafter to be constructed; and it is evident from the facts, that the principal security for the bonds which were being sold was to be created by the completion of the contemplated hotel building. If the position taken by the counsel for the Oriental Investment Company be correct, then an intervening mortgagee could arrest the progress of such work, destroy the statutory rights and liens of all persons who might be engaged in the work, and assert a lien by contract, which would be superior to that given by the law under which the contract was made. This, we believe, can not be maintained.

It is claimed, however, that the lien given by the statute, article 3171, does not give priority to mechanics' liens over mortgages and incumbrances existing upon the land or improvements at the time that the work is done or material furnished for which the statutory lien is claimed. To sustain this position reference is made to Trammell & Co. v. Mount, 68 Texas, 210, in which Judge Willie, in delivering the opinion of the court, uses this language: "The lien of a mechanic, though not fixed before the record of the contract or bill of particulars, when it is fixed, relates back to the time when the work was performed or the material furnished, and hence takes precedence of all claims to the property improved which have been fastened upon it since that time." In that case, the question was as to priority between the lien of a materialman and an attaching creditor. The only question before the court was, whether or not the materialman's lien was prior to that of the attachment, the material having been furnished before levy of the attachment. It did not involve the question now before this court. Besides, that decision was made under the Act of 1885, article 3171, Sayles' Revised Statutes, which reads as follows: "The lien herein provided for shall attach to the buildings, erections, or improvements for which they were furnished, or the work was done, in preference to any prior lien or incumbrance or mortgage upon the land on which said buildings, erections, improvements, or machinery have been put or labor performed, and the person enforcing the same may have such buildings, erections, or improvements sold separately; provided, any lien, incumbrance, or mortgage existing on the land or

improvements at the time of the *accrual* of the lien herein provided for, shall not be affected thereby." In 1889 the Legislature re-enacted article 3171, as above quoted, there being no material difference in the language used in the first clause of that section as amended, from that used in the original article. The proviso in the article as re-enacted in 1889 reads thus: "Provided, any lien, incumbrance, or mortgage on the land or improvement at the time of the *inception* of the lien herein provided for, shall not be affected thereby, and holders of such liens need not be made parties in suits to foreclose liens herein provided for." The language of this proviso differs from that embraced in the original article only in the omission of the word *existing,* which does not change the meaning of the law, and in the use of the word *"inception"* in lieu of the word *"accrual."* In view of the fact that the former act had been by the Supreme Court of this State construed as fixing the time when the lien began at the date when the work was done or material furnished, and the further fact that the word *"accrual,"* as used in the former statute, and upon which that decision must have been based, is replaced by the word *"inception,"* we must conclude that the Legislature intended to make a change as to the time at which the lien given by the statute should begin, otherwise the change would have been useless.

What is meant by the *"inception* of the lien," as used in the statute, we must determine from a consideration of the language of the proviso, in connection with other provisions of the law. The Constitution of this State secures to mechanics, artisans, and materialmen a lien upon the buildings and articles made or repaired by them, for the value of their labor done thereon, or the material furnished therefor, and commands the Legislature to provide by law for the speedy and efficient enforcement of said liens. Const., art. 16, sec. 37. In obedience to this mandate, the Legislature has enacted the law referred to, which will be liberally construed in order to secure the rights guaranteed by the Constitution. By article 3179, Revised Statutes, herein before quoted, all liens are put upon an equal footing, and each mechanic, materialman, or laborer participates in the lien created by the statute, from the foundation to the final completion of the structure. The man who lays the foundation has an equal claim upon the whole structure with all others, and the man who completes the work has an equal claim upon the foundation with him who does the work thereon or furnishes the material therefor. The lien, then, which is secured by statute, extends in favor of each from the beginning to the completion of the work; and if it so extends and embraces all that has been done from the beginning to the completion, its "inception" must be the time to which it is made to relate in giving it effect. The word "inception" means "initial stage." Century Dictionary. It does not refer to a state of actual existence, but to a condition of things or circumstances from which the thing may develop. When the building has been projected and construction of it entered upon that is contracted

for, the circumstances exist out of which all future contracts for labor and material necessary to its completion may arise, and for all such labor and material a common lien is given by the statute; and in this state of circumstances the lien to secure each has its "inception."

Under a statute in the State of Iowa by which "the mechanic's lien is made to attach from the commencement of the buildings, erections, or other improvement," it has been held, that "all persons furnishing material or labor in the construction and completion of any building, erection, or improvement, acquire a lien upon the entire building or improvement, superior to the lien of any mortgage which may be given by the owner upon the lands or improvements subsequent to the beginning of the work on such building or improvement." Nelson v. Railway, 44 Iowa, 73; Brooks v. Railway, 101 U. S., 443. In Brooks v. Railway it was held, that where a railroad was built by sections, and after the completion of one section of the road a mortgage was given and bonds issued, constituting a first mortgage lien upon the entire road built and to be constructed, contractors and laborers who furnished material and labor in the construction of the subsequent sections of the road, and after the record of the mortgage and issue of the bonds, had a lien upon the entire road for the work so done. The reasoning in that case is very conclusive as to the right and justice of this construction of the statute. It is true that the language of the statute of Iowa is more definite in its terms than the statute of this State, but we believe that a proper construction of our statute, as above shown, gives to it the effect that was given to the Iowa statutes in the cases cited.

If the construction claimed by the plaintiffs in error be given to the statute of this State, it would result in many absurd and unjust consequences. For example, let us suppose that Griffiths' contract called for the completion of the hotel building, except the portions for which the other plaintiffs furnished material or upon which they performed labor, and that Griffiths' contract had been complied with and the building completed, except the portions last named; and that after this was done, Griffiths' claim remaining unpaid, the deed of trust had been executed, as it was in this case, before the contracts were made under which the other plaintiffs acquired their rights. Now, by the construction claimed, Griffiths would have a prior lien as to the mortgage upon the entire building, including all that the other plaintiffs had furnished, either in material or labor, and yet they who furnished the material or labor would have only a second lien thereon, for the reason that the mortgage intervening would take precedence over them.

If we adopt the construction of the statute which seems to have been applied by the District Court and approved by the Court of Civil Appeals, the result will be, in such case as that stated above, that Griffiths would have his lien upon all the work completed by him, and would be allowed to participate in the proceeds of that which had been added by the other plaintiffs, while they would be denied their

statutory right to participate with him in the portion completed before the mortgage was given. Suppose that Griffiths had the entire con-. tract for building the house except the plastering and painting, and that before the plastering and painting was done the mortgage had been given, then the result would be, that Griffiths would have his lien upon the entire building, plastered and painted; while the other parties, who did the plastering and painting and furnished the material therefor, would have a lien equally with Griffiths only upon the plastering and painting as it might be upon the walls, wood work, or other parts of the house. Would it be practicable to separate these in case of a foreclosure of the lien and sale, so as to adjust the rights of the parties in the proceeds of that portion consisting of the plastering and painting? In fact, it would be almost impossible to construct a house of any considerable value, except upon cash payments, without making such complications between the parties as would render it impracticable, if not impossible, to adjust their equities under any such rule of construction as that upon which this judgment is based.

. When a statute is plain and unambiguous in its terms and not susceptible of more than one construction, courts are not concerned with the consequences that may result therefrom, but must enforce the law as they find it. But when a statute is ambiguous in its terms or susceptible of two constructions, then the evil results and hardships which may follow one construction may be properly considered by the court, and it is right that the court shall place upon the statute that interpretation of which it is fairly susceptible, which will attain the just solution of the questions involved and protect the rights of all parties. Suth. Stat. Con., sec. 324. The construction that we place upon the statutes of this State, to the effect, that when the erection of any building or construction of any improvement is begun that constitutes the *inception* of all subsequent liens, is consistent with the entire body of the statute laws of this State on the subject, preserves the rights of all those who contribute to the construction of the building, and affords an easy solution and just result in case of intervening liens; for it is but just, that he who acquires a lien upon property under such circumstances, and seeks to derive to himself the benefits of the improvement to be made, enhancing in value the security thus obtained, should be charged with notice that those who thereafter perform labor upon or furnish material for the completion of such improvement, will be protected under the law in the liens created by the statute. Brooks v. Railway, 101 U. S., 443.

We therefore hold, that under the facts in this case, John Griffiths, Eaton & Prince Company, Baker & Smith Company, Wallace L. De Wolfe, and W. G. Neiman, as assignee of W. H. Spellman, were entitled to have their liens foreclosed upon the lot upon which the building was situated and the entire building, and that the same should have been sold as a whole and the proceeds applied to the discharge of their several claims, if sufficient; and if not sufficient, that they

then be paid pro rata; and if there should be any surplus of such proceeds after payment of all of the said liens, then such surplus to be paid to the Oriental Investment Company; but in case the proceeds of such sale should not discharge the claims of the said parties, then that execution should issue against the Oriental Hotel Company for the balance remaining unpaid.

The District Court erred in ordering the sale of the land, foundation, and basement separately from the balance of the building, and in ordering the proceeds of such sale to be applied to the payment of Griffiths' claim, to the exclusion of the other lien holders; and also in ordering the building other than the land, foundation, and basement to be sold separately and the proceeds distributed among the several lien holders; and the Court of Civil Appeals erred in affirming the said judgment for that reason. It is therefore ordered, that the judgments of the District Court and of the Court of Civil Appeals be reversed, and that judgment be here rendered in favor of the plaintiffs below and W. G. Neiman for the several amounts for which judgment was rendered by the District Court, and that the liens of all the said parties be foreclosed upon the land and the entire building, and the proceeds distributed in accordance with this opinion. It is further ordered, that the plaintiffs in error recover from the defendants in error all costs of the Court of Civil Appeals and of this court, and that the defendants in error recover of the plaintiffs in error the costs of the District Court.

*Reversed and rendered.*

Delivered November 4, 1895.