

# THE ATTORNEY GENERAL

## OF TEXAS

GERALD C. MANN

~~WILLKINSON~~

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Mr. C. D. Simmons, Comptroller
University of Texas
Austin, Texas

Dear Mr. Simmons:

> Opinion No. O-2716
> Re: Authority of Board for Lease
> of University Lands to offer
> and sell gas rights only in
> University lands.

Your letter of October 22, 1940, requests the opinion of this department as to whether or not the Board for Lease of University Lands is authorized to offer for sale and to sell the gas rights only in certain tracts of University lands, without offering at the same time to sell oil leases upon such land.

The authority of the Board to offer for sale and to sell oil and gas in University lands is found in Chapter 148 of the Acts of 1937, Article 2603a, Vernon's Annotated Civil Statutes, which Act amends Chapter 282 of the Acts of 1929, and Chapter 174 of the Acts of 1931.

Section 4 of Article 2603a provides, in part, as follows:

> "Whenever there shall be such demand for the purchase of <u>oil and gas</u> in any University land as will reasonably insure that said <u>oil and gas</u> may be sold advantageously, the Board shall place said <u>oil and gas</u> in said lands on the market in separate tracts of such area and extent as the Board may determine most suitable for the profitable marketing thereof, but in no event shall any tract in which <u>oil and gas</u> is offered for sale as a unit exceed an area of six thousand (6,000) acres. The sale of said <u>oil and gas</u> shall be made at public auction and shall be held in Austin, Texas, at any hour between ten o'clock A.M. and five o'clock P.M. The Board shall cause to be advertised a brief description of the lands upon which the <u>oil and gas</u> is proposed to be sold, . . . . "
> (Underscoring ours).

Section 5, in part, provides as follows:

"The _oil and gas_ in each tract shall be offered
for sale for a bonus in addition to the  stipulated
royalty.  Each tract shall be offered separately.
Each bid shall be subject to such royalty as is
specified in the official advertisement preceding
the sale, but in no event shall be less than one-
eighth of the gross production of _oil and gas_ in
the land; . . . . "  (Underscoring ours)

Section 7 provides:

"If any one of the bidders at the sale at pub-
lic auction shall have offered a reasonable and
proper price for any tract offered not less than
the price fixed by the Board, the land advertised
may be leased for _oil and gas_ purposes under the
terms of this Act and such regulations as the
Board may prescribe, not inconsistent with the
provisions of this Act.  All bids may be rejected
by the Board."  (Underscoring ours).

Section 8 provides, in part, as follows:

"(a)  If the Board shall determine that a satis-
factory bid has been offered for said _oil and gas_,
it will make an award to the bidder offering the
highest price therefor, and a lease shall be executed
by the Commissioner of the General Land Office, a
duplicate copy of such lease to be filed in the
General Land Office.

"(b)  The primary term of the lease, as deter-
mined by the Board prior to the promulgation of
the advertisement, shall in no case exceed five
(5) years, and each lease shall provide that the
lease shall terminate at the expiration of its
primary term, and shall provide that if _oil and/
or gas_ is being produced in paying quantities from
the premises before termination of the primary
term, said lease shall continue in force and ef-
fect as long as such _oil and/or gas_ is being so
produced.  The lease shall include such additional
provisions and regulations, not inconsistent with
the provisions of this Act, as the Board may pre-
scribe to preserve the interests of the State and
safeguard the University funds."  (Underscoring ours).

It will be noted that this statute, in Section 4, au-

thorizes the Board, in certain circumstances, to place 'oil and gas' on the market; that the tracts in which 'oil and gas' is offered for sale shall not exceed 6,000 acres and that the 'oil and gas' shall be sold at public auction.

In Section 4, it is provided that the 'oil and gas' shall be offered for sale for a bonus; that the royalty shall not be less than 1/8th of the gross production of 'oil and gas' in the land.

Section 7 provides that under certain conditions the land advertised may be leased for 'oil and gas' purposes.

In Section 8, provision is made for execution of leases if the Board determines that a satisfactory bid has been offered for said 'oil and gas', and that such lease shall provide that if <u>oil and/or gas</u> is being produced in paying quantities, before termination of the primary term, said lease shall continue in force and effect so long as such <u>oil and/or gas</u> is being so produced.

We recognize the rule of statutory construction which permits the word "and" to be held as having been used in the disjunctive as well as the conjunctive sense when the purpose sought to be accomplished by the Legislature is thereby effected. In Chapter 148, however, the Legislature, while expressly resorting to use of the phrase <u>and/or</u> in Section 8 (b), where provision is made for keeping the lease alive during the production of <u>either</u> oil or gas, failed to use such term in providing for the offering for sale, the advertisement, the sale of leases, and the bonus and royalty to be paid. The fact that the Legislature in one section of the statute used the definite term "and/or", whereas in other sections of the same statute such term was not used, but instead the conjunctive "and" was used is, to us, highly persuasive against a construction of the statute in a manner which would result in giving the same meaning to the word "and" in Sections 4, 5 and 7, as must, perforce the express wording of the statute, be given to the phrase "and/or" in Section 8.

Furthermore, viewing the consequences of the two possible constructions of the statute, as it is permissible to do when the language used is not entirely plain - Oriental Hotel Company v. Griffiths, 88 Tex. 574, it is apparent that if Sections 4, 5 and 7 of the statutes be construed to authorize leases for either oil or gas, results will thereby be occasioned which were plainly not intended by the Legislature. To illustrate, - Assume a lease is made for gas only on a tract of land. In the process of drilling for gas, oil is discovered in paying quantities, which oil flows without the necessity

of pumping.  Under a lease limited to gas alone, no royalty for the oil produced would be provided for, nor any obligations or covenants on the part of the gas lessee with respect to the production of oil.  If, however, oil is produced in paying quantities, the gas lease, by virtue of the express provisions of Section 8 (b), is continued in force beyond its primary term even though gas is not produced in paying quantities.

We think it plain that no such results were intended by the Legislature.  Instead, we believe the Legislature intended that the oil and the gas in a specific tract of land should be offered for sale together, not each mineral separately; that the cash payment - the bonus - should be bid and paid for both the oil and gas, not for oil alone or gas alone; that the lease should cover both the oil and the gas and, by virtue of Section 8 (b), that the discovery and continued production of either oil or gas will operate to continue the lease in force on both oil and gas for as long as either oil or gas is so produced, subject, of course, to the fulfillment by the lessee of all the covenants and obligations of his lease.

Accordingly, you are advised that it is our opinion that the Board for Lease of University Lands is not authorized to offer for sale or to sell the gas only in University lands.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Robert E. Kepke
Robert E. Kepke
Assistant

REK:BT:wc


APPROVED OCT 30, 1940
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman