The **LUBBOCK NATIONAL BANK,**
Appellant,

v.

**Ben HINKLE et ux., et al., Appellees.**

No. 7530.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 1, 1965.

Rehearing Denied Dec. 6, 1965.

Key, Carr & Clark, Lubbock, for appellant.

Evans, Pharr, Trout & Jones, Anderson & Edwards, Lubbock, McDonald, Sanders, Nichols, Wynn & Ginsburg, Fort Worth, for appellees.

CHAPMAN, Justice.

This case involves the question that so often arises in controversies between lending agencies such as banks and loan companies on the one hand and affidavit lien claimants furnishing labor and materials that go into the construction of residences and other buildings.

All emphases and parenthetical statements herein are ours.

On November 28, 1962, Ben Hinkle and wife, Lemmie Lou Hinkle, executed a $6,000 vendor's lien note payable to the Lubbock National Bank secured by a vendor's lien retained in a warranty deed in which they purchased Lot 48 and the west sixty feet of Lot 49 of the Melonia Park Addition, a residential subdivision in the City of Lubbock.

On the same date the Hinkles executed a mechanic's and materialman's lien contract securing a promissory note in the original sum of $24,000 to pay for the construction of a house on the described property. Such note was payable to Lyndle Mitchell, the contractor of record, and the contractual lien was entered into between the Hinkles and Mitchell. Also on November 28, 1962, that note was endorsed by Mitchell without recourse to the bank and the contractual mechanic's and materialman's lien securing it was transferred to the lending institution. The bank advanced $6,000 on the vendor's lien note on November 30, 1962, and $20,000 on the $24,000 promissory note as follows: "December 7, 1962, $10,000; December 31, 1962, $5,000; February 4, 1963, $5,000."

No point is made as to the priority of the $6,000 vendor's lien note, so it will be given no further treatment in this opinion.

The bank sought judgment against the Hinkles on the mechanic's and material-man's lien note, secured by the above mentioned contract duly filed for record, sought foreclosure of the lien and note and a determination that it was prior and superior to the lien claims of those furnishing labor and materials.

The court held all claims by appellees under their mechanic's liens who had furnished labor and materials were of equal dignity to the contractual mechanic's and materialman's lien purchased by the bank. It was agreed that all mechanic's liens of the laborers and materialmen were filed for record in due and statutory time and in proper form.

The court in his findings of fact found that the mechanic's and materialman's lien securing the $24,000 note was recorded prior to the time the affidavit material-man's liens were perfected, as was the last advancement of money on the lien and note it secured.

In his conclusions of law he concluded, inter alia, that the contractual mechanic's and materialman's lien for $24,000 executed by the Hinkles to the record contractor, Lyndle Mitchell, and the mechanic's lien affidavits were of equal dignity and the owners are entitled to share pro rata in the amount of any of the proceeds remaining from the sale of the subject property after payment of all prior encumbrances and indebtednesses created by law or by agreement of the parties.[1]

There is not any question from the record but that the bank bought the $24,000 note believing they were purchasing a lien on a homestead. However, Mr. Hinkle's testimony itself, after he was taken on cross-examination, shows as a matter of law that the place where he was living at the inception of the liens on the subject house was then his homestead, and contin-

ued to be during the time the affidavit liens were accumulating. Counsel for all parties admitted in oral argument that the property giving rise to the controversy was not a homestead, so it would be supererogate for us to consider that question further.

■ We hold the trial court properly disposed of the question of priority of liens.

Article 16, Section 37 of the Constitution of Texas, Vernon's Ann.St., provides:

"Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

In accordance with the direction of the Constitution, the Legislature adopted what has evolved into the title called "Mechanics, Contractors and Material Men," Volume 16, Chapter 2, Articles 5452 to 5472d inclusive, Vernon's Ann.Tex.Civ.St.

Within the group of articles named is Article 5459 providing:

"The lien herein provided for shall attach to the house * * * for which they were furnished * * * in preference to any prior lien * * * upon the land upon which the houses * * * have been put * * * ; provided, any lien * * * on the land or improvement at the time of the *inception* of the lien herein provided for shall not be affected thereby * * *."

The article just quoted is the successor to Article 3171, Laws of Texas, Vol. 9, General Laws, 1885, Chapter 66, p. 684.

---

1. The prior "encumbrances and indebtednesses" constituted principally the sums agreed by all parties that would be incident to the sale of the house and the costs of repairs and completion in preparing it for sale, and the $6,000 vendor's lien note.

At that time the statute used the word "accrual" wherein it said:

"* * * provided, any lien, incumbrance or mortgage existing on the land or improvements at the time of the *accrual* of the *lien* [2] herein provided for shall not be affected thereby."

In 1889 the Legislature amended Article 3171 (now Article 5459, V.T.C.S.) to change as the only material amendment thereto the word "accrual" to "inception." Our Supreme Court then said "* * * we must conclude that the legislature intended to make a change as to the time at which the lien given by the statute should begin; otherwise, the amendment would have been useless." Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652. That court in the case just cited then held:

"When the building has been projected, and construction of it entered upon,—that is, contracted for,—the circumstances exist out of which all future contracts for labor and material necessary to its completion may arise, and for all such labor and material a common lien is given by the statute; and in this state of circumstances the lien to secure each has its 'inception.'"

So far as we have been able to determine, the Supreme Court has never overruled their pronouncements upon priority of liens made in the Oriental Hotel Co. case. In fact, they approved it in Sullivan v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S.W. 307. Though stating that the facts of the Oriental Hotel Co. case "went as far as the law justifies to sustain such liens, *which are much favored by our constitution and laws,*" the same judge writing for the same court in Sullivan v. Texas Briquette & Coal Co., supra, still approved the court's previous holding in the Oriental Hotel Co. case in the following language:

"In the case of [Oriental] Hotel Co. v. Griffiths, 88 Tex. [574] 583, 33 S.W.

652, 30 L.R.A. 765, 53 Am.St.Rep. 790, this court determined the meaning of the word 'inception,' as used in the statute, in the following language: 'What is meant by the "inception" of the lien, as used in the statute, we must determine from a consideration of the language of the proviso, in connection with other provisions of the law. The constitution of this state secures to mechanics, artisans, and material men a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or the material furnished therefor, and commands the legislature to provide by law for the speedy and efficient enforcement of said liens. Const. art. 16, § 37. *In obedience to this mandate, the legislature has enacted the law referred to, which will be liberally construed in order to secure the rights guarantied by the constitution.' Under this rule the inception of the lien relates to the date when there was a contract made under which work was done or material furnished."

* * * * * *

"In that case Griffiths had entered into a contract with the Oriental Hotel Company for the construction upon the lot which it then owned of a building according to specifications then furnished, and embracing all work which was subsequently done, or for which material was furnished, by the persons who claimed liens in that case. The bonds were issued and the mortgage given for the purpose of securing the payment of that contract, * * *. This court held that in issuing those bonds and in making the deed of trust to secure them the completion of that contract according to the specifications was in the contemplation of the parties, and that the liens for all material furnished and labor done in the performance of that contract

2. The word "lien" had reference to the affidavit lien holders, those furnishing labor, materials, etc.

288

had their 'inception' when the contract was made."

In the instant case under the authorities quoted, the liens of the suppliers furnishing labor and materials would therefore relate back to the *"date when there was a contract made under which work was done or material furnished,"* that date being the same date on which the contract was made for the construction of the house and the same date the bank's lien was acquired.

Surely it cannot be said that the language used in Sullivan v. Texas Briquette & Coal Co., supra, wherein the court said: "Under this rule the inception of the lien relates to the date when there was a contract made under which work was done or material furnished" is surplusage, because the court then proceeded to distinguish the Oriental Hotel case from the one on which it was then writing, in the following language:

"There is no evidence that we have been able to discover in this record * * * which shows at the time the mortgage was executed any contract for this improvement had been let, or that the particular improvements were intended to be provided for by the making of that mortgage."

Of course, the Supreme Court is bound by the rules announced in the last two cases mentioned only to the extent that they feel bound by the rule of stare decisis. We, as an intermediate appellate court, feel compelled to follow the rules that court has laid down. There is no material and substantial distinction that can be legitimately drawn between this case and the pronouncements of the cases just mentioned. If the Supreme Court had intended to discard or alter the "relation-back" doctrine since the word "accrual" was changed to "inception" and the latter term interpreted by them seventy years ago in the Oriental Hotel case and again approved six years later in the Texas Briquette & Coal Co. case, they surely would have said so by now. We have read all the supreme judicial expressions we could find on the subject and have been unable to discover any which have overruled either the Oriental Hotel case or the Texas Briquette & Coal Co. case.

Accordingly, the judgment of the trial court is affirmed.