**FINGER FURNITURE COMPANY, Inc., et al., Appellants,**

**v.**

**The CHASE MANHATTAN BANK, Appellee.**

**No. 14552.**

Court of Civil Appeals of Texas.

San Antonio.

Feb. 23, 1967.

Rehearing Denied March 29, 1967.

132

Moursund, Ball & Young, San Antonio, Ellis Morris, Harry Brochstein, Houston, Dobbins & Howard, Schweppe, Schweppe & Allison, Gray, Gardner, Robison & Pape, San Antonio, for appellants.

Clemens, Knight, Weiss & Spencer, San Antonio, Dewey, Ballantine, Bushby, Palmer & Wood, Johnston & Ward, New York City, Wiley & Thornton, Dayton G. Wiley, A. Lewin Plunkett, San Antonio, for appellee.

BARROW, Chief Justice.

This appeal is a multi-party case concerning the rights of appellee, The Chase Manhattan Bank, under its construction loan on the Tradewinds Apartments, as opposed to the claim of appellant Finger Furniture Company, Inc., under a chattel mortgage,

and the lien claims of appellants Olmos Building Materials Company, Hicks Company, Inc., and Door Unit Mfg. Corp., who were contractors and materialmen on the project. After a non-jury trial, the rights of Chase were held superior to all other claimants. Although the facts and the law differ somewhat as to each of the appellants, the claims were consolidated in the trial court and all four appeals were made under one record. The basic questions on this appeal relate to the validity and priority of the liens of the parties.

Certain general facts apply to all parties. Alvin Frieden, as general contractor, entered into a written contract bearing date of August 15, 1962, with F. B. & D., Inc., a Texas corporation of which Frieden was President and General Manager, to construct an apartment complex to be known as the Tradewinds Apartments, pursuant to certain plans and specifications, for the sum of one million dollars. On September 18, 1962, FB & D entered into a building loan agreement with The Chase Manhattan Bank, whereby Chase agreed to loan one million dollars and FB & D agreed to erect and fully equip the apartment complex in accordance with the plans and specifications. On the same date FB & D executed a promissory note to Chase in that amount, secured by a deed of trust. The deed of trust was recorded in the deed records, and in the chattel mortgage records of Bexar County on September 18, 1962. Frieden signed all instruments as President of FB & D.

On September 18, 1962, a statutory payment bond in the sum of one million dollars, executed by Trinity Universal Insurance Company as surety, Frieden as contractor, Chase as lender, and FB & D as owner-obligee, was recorded, pursuant to Art. 5472d Vernon's Ann.Civ.St. A dual-obligee bond was also executed on that date, with Frieden as principal and Trinity Universal as surety, in the sum of one million dollars. On the same date a written guaranty was signed by Frieden and Harry S. Pullen and their wives, whereby the guarantors agreed to pay up to $100,000 on this note under certain conditions.

On March 6, 1963, FB & D, by Frieden as President, executed an additional note to Chase in the amount of $200,000 which was secured by another deed of trust, which was recorded in the deed records and chattel mortgage records on April 8, 1963, and payment guaranteed by Frieden and Harry S. Pullen and their wives. Chase advanced the last $100,000 of this $200,000 on September 17, 1963. FB & D was unable to meet its financial obligations incurred in the construction of this apartment project, and on September 4, 1964, Chase took over the management of the complex.

Several suits have been filed on behalf of the unpaid contractors and materialmen. This is the fourth appeal to reach this Court involving construction of the Tradewinds Apartments. See: F. B. & D., Inc. v. Nathan Alterman Electric Company, Tex. Civ.App., 394 S.W.2d 821, writ ref'd n. r. e.; Barlite, Inc. v. Trinity Universal Insurance Company, Tex.Civ.App., 400 S.W.2d 405, writ ref'd n. r. e.; Trinity Universal Insurance Co. v. Palmer, Tex.Civ.App., 412 S.W.2d 691.

## FINGER FURNITURE COMPANY APPEAL

On July 24, 1963, Finger sold furniture to Frieden and Lois Pullen, for use in Tradewinds Apartments, taking a promissory note for $59,881.00, secured by a chattel mortgage which was recorded on September 4, 1963. On July 24, 1963, Finger also sold carpets and drapes to them for installation in the apartment complex for $53,728.60, under a Lease Agreement. The trial court found that this "Lease Agreement" was actually a chattel mortgage which was recorded on October 9, 1963. Finger concedes this finding is correct. Chase assumed and timely made all payments on the furniture note but urged, and the trial court found, that the chattel mortgage on the carpeting and drapes is inferior to the final advancement of $100,-

000 which Chase made on September 17, 1963.

Finger urges that the so-called dragnet clause contained in the printed form of the furniture chattel mortgage, whereby the security for said mortgage is also security for "any other indebtedness for which any mortgagor herein may be or hereafter becomes liable to mortgagee" applies to the indebtedness for the drapes and carpeting. Finger says that since the furniture chattel mortgage was recorded prior to the Chase final advancement of $100,000 this lien is superior.

In Moss v. Hipp, 387 S.W.2d 656 (1965), the Supreme Court set forth the applicable rule for determining the application of such a clause: "Provisions of this type apply only to indebtedness which was reasonably within the contemplation of the parties to the mortgage at the time it was made." Here the trial court found that the "other indebtedness" clause in Finger's chattel mortgage on the furniture was not applicable to the contemporaneous carpet indebtedness.

■ It is our opinion that this finding is fully supported by the record in this case. The furniture note and the lease agreement were both executed on the same occasion. However, only the amount owed on the furniture note was inserted in the blank provided in the chattel mortgage for the amount of the debt. If the parties had intended the furniture chattel mortgage to include the carpeting debt, they could have easily so provided. To the contrary, the parties treated the "lease agreement" as a completely separate agreement, with the apparent intention of trying to retain title to the carpeting and drapes in Finger until paid for by Frieden and Mrs. Pullen. Finger did not record the "lease agreement" as a chattel mortgage until October 9, 1963, which was after Chase had paid the final $100,000 under the March 6, 1963, note.

The furniture note, alone, was at one time assigned to Associates Investment Company by Finger. There is no evidence that Finger at any time prior to filing its cross-action on January 18, 1966, claimed that the lease agreement was secured by the furniture chattel mortgage. Prior thereto it had filed suit in Harris County on the lease agreement, and judgment was taken on March 31, 1965, for the carpet debt. In the meantime Finger had accepted the exact amount due on the furniture note without claiming, for over two years after the carpeting debt was due, that the furniture mortgage secured the carpeting debt. The trial court properly concluded that the parties did not contemplate that the contemporaneous carpeting debt would be secured by the chattel mortgage on the furniture.

■ Finger next urges that neither Chase nor FB & D ever acquired any interest in the carpets and drapes which were sold by it to Frieden and Mrs. Pullen. The deeds of trust in favor of Chase were executed by FB & D. Frieden testified that he had never resold the carpeting and drapes to FB & D. It is fundamental that only the owner of personal property, or someone authorized by him, may execute and deliver an enforceable chattel mortgage. Southwest Security Co. v. Jacques, 42 S.W.2d 232 (Tex.Comm'n App.1931); Maberry v. First Nat. Bank of Littlefield, Tex.Civ.App., 351 S.W.2d 96, no writ; Walker v. Security Loan Inv. Co., Tex.Civ.App., 259 S.W.2d 599, writ ref'd n. r. e.

■ The trial court concluded, however, that Frieden and Mrs. Pullen, by their guaranty agreements and by placing the furnishings in the Tradewinds Apartments under the exclusive possession of FB & D, vested it with requisite ownership. This finding is supported by the evidence. The plans and specifications for the Tradewinds Apartments called for installation of carpeting in the apartments. The March 6, 1963, deed of trust to Chase expressly covered "carpeting" and "furnishings" as

well as other personal property in the apartments, and this was agreed to by Frieden and Mrs. Pullen in their guaranty agreements. The "lease agreement" recognized that the carpeting and drapes were being cut to fit the dimensions of the Tradewinds Apartments and would be of little value if removed. This lease agreement did not prohibit a transfer by Frieden and Mrs. Pullen.

■ This evidence supports a finding that as between FB & D and Frieden and Mrs. Pullen, the two individuals agreed that FB & D was to be the owner of such property, and that it was to be mortgaged to Chase by FB & D. This chattel mortgage was recorded by Chase before the recording of Finger's chattel mortgage on the carpeting and drapes, and before Chase had any notice of same. Insofar as Chase's rights are concerned, it is immaterial that Finger had no notice of this transfer to FB & D. FB & D exercised a degree of possession and control over the furnishings so as to acquire such an interest as to give effect to the chattel mortgage executed to Chase. Maberry v. First National Bank of Littlefield, supra.

Finger also complains that the descriptions contained in the deeds of trust executed by FB & D to secure the loans by Chase are inadequate to describe the carpeting and drapes and same are therefore unenforceable as a chattel mortgage. Only the March 6, 1963, deed of trust is material, in that Chase asserts its rights under this deed of trust which was recorded prior to Finger's recording of the "lease agreement" as a chattel mortgage. The final $100,000 was advanced under this deed of trust on September 17, 1963, after a certificate was filed to the effect that the carpeting had been installed.

This deed of trust which was filed in the deed records and as a chattel mortgage on April 8, 1963, conveys to the Trustee the "land described in Schedule A annexed hereto and made a part hereof. Together with all the improvements now on said land

or which may be placed thereon during the existence of this lien; * * *." Attached as "Schedule A" is a legal description of the land and another paragraph entitled "Chattels Being Mortgaged." Thereafter a full description of all types of fixtures, equipment and personalty for use in an apartment complex, including "carpeting," "fittings" and "furnishings" is given. The deed of trust recites that it is executed and delivered not only as a deed of trust but also as a chattel mortgage.

■ It is significant that Finger does not claim to be an innocent purchaser without notice of Chase's chattel mortgage, but rather is a prior mortgagee that failed to record its mortgage before the time Chase's mortgage attached to the property. Clearly, the chattel mortgage was adequate as to the parties thereto. As between the mortgagee and third parties, it is not essential that the description be so specific that the property may be identified by it alone, if such description suggests inquiries or means of identification which, if pursued, will disclose the property covered by the mortgage. Anderson-Dunham, Inc. v. Lee Rubber & Tire Corp., Tex.Civ.App., 378 S.W.2d 99, writ ref'd n. r. e.; Highland Park State Bank v. Continental Nat. Bank of Fort Worth, Tex.Civ.App., 300 S.W.2d 304, writ ref'd n. r. e.; Trinity State Bank v. Bowie Contracting Co., Tex.Civ.App., 232 S.W.2d 863, writ dism'd; Plains Tractor & Equipment Co. v. Great West Mill & Elevator Co., Tex.Civ.App., 60 S.W.2d 856, writ ref'd.

■ Here Finger was charged with notice that the carpeting and drapes were specially made for use in Tradewinds Apartments. The deed of trust plainly stated it covered both realty and personalty. The schedule attached to same included these items. Such instrument was notice of the intent to secure a chattel mortgage on the personalty as well as a deed of trust on the realty and the description was sufficient.

Finger's other points, complaining of the alleged conversion by Chase of Finger's carpeting and drapes, and of the trial court's finding that Finger waived its right to foreclose on its furniture chattel mortgage because of the default in payment of the carpeting debt, are immaterial in view of our holding that Chase had a valid mortgage on said furnishings and that they were not covered under the dragnet clause of the furniture mortgage.

The judgment of the trial court that Finger's chattel mortgage lien on the carpeting and drapes is inferior to Chase's advancement of $100,000 under its 1963 deed of trust is affirmed.

## OLMOS BUILDING MATERIALS COMPANY AND HICKS COMPANY, INC., APPEALS

Both of these appeals involve the proper interpretation and application of the "relation back" theory of mechanics' and materialmen's liens as established in the landmark case of Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652, 30 L.R.A. 765 (1895). It is urged by Olmos and Hicks that their liens had their inception on August 15, 1962, when the general contract between FB & D and Frieden was executed, under which the Tradewinds Apartments were constructed. The evidence is undisputed that substantial work was performed under this contract with the knowledge of Chase prior to the execution and recording of the deed of trust to Chase. The trial court found that Olmos and Hicks each had valid constitutional and statutory liens, but that same were inferior to the deed of trust of Chase which was recorded on September 18, 1962, to secure the $1,000,000 loan to FB & D.

On September 17, 1962, Olmos contracted in writing with FB & D to furnish brick and other materials to be used in constructing the Tradewinds Apartments. The first materials were delivered on October 15, 1962, and deliveries continued periodically until August 3, 1963. The trial court found that FB & D is indebted to Olmos in the principal sum of $9,595.85.

On November 19, 1962, Hicks contracted in writing with FB & D to furnish and install tile baths and other materials in the Tradewinds Apartments. The first work was performed under this contract on November 30, 1962. The trial court found that FB & D is indebted to Hicks in the principal sum of $9,588.54.

In Oriental Hotel Co. v. Griffiths, supra, the Supreme Court, after reviewing the amendment of the statutes relative to the time that a mechanics' and materialmen's lien becomes affixed, adopted what is known as the "relation back" rule as follows: "When the building has been projected, and construction of it entered upon, —that is, contracted for,—the circumstances exist out of which all future contracts for labor and material necessary to its completion may arise, and for all such labor and material a common lien is given by the statute; and in this state of circumstances the lien to secure each has its 'inception.' " In Sullivan v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S.W. 307, the Supreme Court clarified the *Oriental Hotel Co.* rule and restricted its application to the situation where a building has been projected and a contract for its construction executed by the owner and a contractor.

In McConnell v. Mortgage Investment Co. of El Paso, 157 Tex. 572, 305 S.W.2d 280 (1957), the Supreme Court reaffirmed the "relation back" rule for the time of inception of mechanics' and materialmen's liens, providing that there is a general construction contract between the owner and contractor in existence calling for construction of the projected building. If there is such a general construction contract, the liens incurred in construction of the projected building are on a parity with each other and have their inception on the date such contract was executed. See also Lubbock National Bank v. Hinkle, Tex.Civ.App., 397 S.W.2d 285, writ ref'd n. r. e.; Newman v. Coker, Tex.Civ.App., 310 S.W.2d 354, no

writ; McConnell v. Frost, Tex.Civ.App., 45 S.W.2d 777, writ ref'd.

The primary difficulty in determining the application of this rule here is that although Frieden was obligated under his general contract with FB & D to furnish all materials and to complete the project in accordance with the plans and specifications, FB & D, for reasons not established by this record, contracted directly with Olmos and Hicks for their work. Thus Olmos and Hicks assert their claims as "original contractors" from the owner, FB & D, although the labor and materials furnished by them were within the contractual obligation of Frieden. It is noted that two of the lien claimants in *Oriental Hotel Co*. had entered into contracts directly with the hotel company rather than the general contractor and were held on a parity with other mechanics' lien claimants. This holding has not been modified by the Supreme Court, and in our opinion controls this case. Contra: Regold Mfg. Co. v. Maccabees, Tex. Civ.App., 348 S.W.2d 864, writ ref'd n. r. e.

■ An additional question is presented as to the effect of the statutory payment filed under the provisions of Art. 5472d Vernon's Ann.Civ.St. Olmos and Hicks assert no claim under this bond, but Chase urges it prevents them from securing a valid lien. Under the terms of this statute, when a proper bond is furnished by an original contractor, it constitutes claimant's only statutory security for claims arising under the contract filed with the payment bond. Barlite, Inc. v. Trinity Universal Ins. Co., 400 S.W.2d 405, writ ref'd n. r. e. Obviously, this statute would not affect the constitutional lien of Olmos and Hicks.

■ The record in this case establishes that, a general construction contract was executed between FB & D and Frieden, and work was performed thereunder prior to the execution and recording of the deed of trust to Chase. The constitutional liens of Olmos and Hicks arose in performance of work and furnishing of materials clearly contemplated by the plans and specifications of this general contract. Therefore, under the "relation back" rule of Oriental Hotel Co. v. Griffiths, supra, these liens had their inception prior to and are therefore superior to the deed of trust lien of Chase.

Chase urges as a cross-point that in the event the lien of Olmos or Hicks is found superior to its deed of trust lien, Chase is entitled to assert claim over against Trinity Universal Insurance Company under the terms of the statutory performance bond and/or the dual-obligee bond. Both Trinity and Chase agree that to do so this phase of the case must be severed and remanded to the trial court for determination of their respective rights.

## DOOR UNIT MANUFACTURING COMPANY APPEAL

The principal question presented by this appeal is the correctness of the trial court's finding that Door Unit did not perfect a valid lien. On August 27, 1962, Door Unit entered into an oral contract with Alvin Frieden to furnish windows and screens for the Tradewinds Apartments. The sum of $25,382.00 is due and owing under that contract. The controlling finding of the court is that the lien affidavit was not timely filed by Door Unit, in that it was filed on September 24, 1964, some ten months after delivery of the last materials under its contract.

Door Unit introduced an invoice showing delivery and receipt by the apartment manager on August 11, 1964, of half-screens of the value of $87.00. Chase urged and the trial court found that this delivery was not shown to be referable to the terms of the contract as required by Art. 5467(3) Vernon's Ann.Civ.St.

■ It is our opinion that this finding is supported by the evidence and therefore Door Unit's lien was not timely perfected. There was no evidence as to the purpose of

**138**

these half-screens or who had ordered them. The only other work performed, or material furnished, by Door Unit after September or October, 1963, was to replace windows which were broken by vandals in May, 1964. All other evidence indicates that the apartment complex was substantially completed by September or October of 1963. All other lien claimants completed their work by the fall of 1963. A certificate of completion was filed on September 17, 1963, by Chase's supervising engineer. The City of San Antonio issued its Certificate of Occupancy on September 16, 1963. In June, 1964, the management of these apartments was taken over by Naylor Realty Company and there was testimony from its manager that the screens were not ordered by Naylor or with its knowledge. Under this evidence the trial court was justified in finding that the screens delivered in August, 1964, were not referable to the contract and therefore the lien was not timely filed.

Door Unit's other points have reference to the priority of its lien and are therefore immaterial.

The judgment of the trial court is affirmed insofar as appellants Finger Furniture Company and Door Unit Manufacturing Company are concerned; insofar as appellants Olmos Building Materials Company and Hicks Company, Inc., are concerned the judgment is reformed to provide that their liens are superior to the deed of trust lien of Chase Manhattan Bank; the claim of Chase Manhattan Bank against Trinity Universal Insurance Company, growing out of the liens of Olmos Building Materials Company and Hicks Company, Inc., is hereby severed and remanded to the trial court. The costs are taxed one-third against appellant Finger Furniture Company, one-third against appellant Door Unit Manufacturing Company, and one-third against appellee, Chase Manhattan Bank.

KLINGEMAN, J., not participating.