HARVESON et al. v. YOUNGBLOOD.
No. 1443—5666.

Commission of Appeals of Texas, Section A.
May 16, 1931.

A. C. Heath, of Fort Worth, and George T. Burgess, of Dallas, for plaintiffs in error.

F. M. Bransford, of Fort Worth, for defendant in error.

CRITZ, J.

This suit was filed in the district court of Tarrant county, Tex., by T. H. Youngblood against F. V. Sprowls et al., to establish and foreclose a mechanic's lien on lot No. 10 in block No. 8, Berkeley addition to the city of Fort Worth, in Tarrant county, Tex., and to recover judgment against Sprowls for $794. Judgment in the district court was for Youngblood, granting him the relief prayed for. This judgment was affirmed by the Court of Civil Appeals. 23 S.W.(2d) 879. The opinion on rehearing does not seem to be published.[1]

It seems from the record that Sprowls made an oral contract with Youngblood to do certain plumbing and install certain plumbing fixtures in a house he (Sprowls) was erecting on the above lot for an agreed price of $794. Youngblood completed the contract according to its terms, and on failure of Sprowls to pay therefor Youngblood took the necessary steps to establish and fix a mechanic's lien by filing the affidavit required by law with the county clerk of Tarrant county, Tex. Youngblood sues Sprowls as the original owner of the lot and maker of the contract, and alleges that the other defendants are claiming some character of right in the property. He then alleges that any claims held by any of the defendants are inferior to his lien.

It seems from the record that Rogers et al., the then owners, by deed dated February 8, 1927, conveyed the lot in question to Sprowls for a recited cash consideration of $2,500. Prior thereto Sprowls signed a contract dated September 20, 1926, with one E. F. Gunn, for the erection of certain improvements on lot No. 11 in block No. 8 of the above addition, and in this contract executed a note and lien on lot 11 to Gunn for $12,000. It seems that the description of the lot was a mistake, and that it was intended to describe lot 10. On September 22, 1926, Gunn transferred and assigned this lien and note to John Quarles Company, a corporation; and same was filed for record on the same day. By deed dated February 10, 1927, and filed for record February 26, 1927, Sprowls and wife conveyed lot 10

---

[1] Not to be published by order of court.

to Q. A. Harveson for a recited consideration of $7,000 cash and a $6,500 note, secured by a vendor's lien and deed of trust. The $6,500 note was transferred to the Lincoln National Life Insurance Company.

On February 14, 1927, Harveson and wife, for the purpose of extending this note, executed their note to the life insurance company in the same amount, and at the same time executed a deed of trust on lot 10 to secure the payment thereof. This instrument was filed for record February 26, 1927. It is shown that the sale from Rogers et al. to Sprowls, the sale from Sprowls and wife to Harveson, and the loan by the life insurance company were all closed simultaneously on February 26, 1927, and that part of the money paid by the insurance company was used to pay Rogers et al. the $2,500 cash consideration recited in their deed to Sprowls, and that substantially all of the balance of the $6,500 advanced by the insurance company was paid to John Quarles Company on the note given by Sprowls to Gunn and transferred by Gunn to Quarles Company. We refer to the opinion of the Court of Civil Appeals for further statement of the case. The pleadings of the several parties are sufficient to raise the questions we shall discuss.

By their first assignment of error the plaintiffs in error contend that the Court of Civil Appeals erred in not reversing the judgment of the district court, and in not holding that Harveson and the life insurance company were subrogated to the rights of the holder on a vendor's lien on account of having paid the consideration for the sale from Rogers et al. to Sprowls, and also in not holding that they were subrogated to the mechanic's lien executed to Gunn by Sprowls, which lien was also paid out of the proceeds of the insurance company's loan to Harveson, and in not holding that these liens were at least equal to Youngblood's lien.

The Court of Civil Appeals declined to pass on the above assignment holding the same not properly presented by the brief, and in so holding said:

"As to this contention insofar as not disposed of in our original opinion, we have to say that upon a re-examination of the assignments of error and propositions presented, we find only one assignment of error, to-wit, the 33rd, on page 13 of appellants' original brief, which in direct terms present the contention above indicated. But the proposition following this assignment, to-wit, the 23rd, to be found on page 19 of appellants' original brief, complains of an entirely different matter, viz: The introduction of certain testimony complained of as inadmissible, as will be seen by the following quotation of the proposition:

" '23rd Proposition. The contract inquired about being in writing, properly executed by the parties, filed for record in the office of the County Clerk of Tarrant County, the testimony of said witness, was incompetent to vary, change or modify the terms thereof, in the absence of proper pleading of fraud, accident or mistake. (Under 33rd Assignment of Error, Transcript 49).' "

"From the statement of the assignment and proposition thereunder, it is apparent that the proposition is not germane to the assignment as required by Rule 30, promulgated for observance by the Courts of Civil Appeals, and under the rules, assignments of error must be followed by propositions, and to entitle a complainant to a review of the question, the proposition must be germane to the assignment. See Rule 30, and Randals v. Pecos Valley State Bank [Tex. Civ. App.] 162 S. W. 1190; Columbia [Columbian] Nat. Fire Ins. Co. v. Dixie Co-op. M. O. House [Tex. Com. App.] 276 S. W. 220."

The plaintiffs in error contend that the Court of Civil Appeals erred in holding that the only proposition contained in the brief based on the assignment mentioned is the twenty-third proposition, but that the twenty-seventh and twenty-eighth propositions, to be found on page 20 of the brief, present the issue. The two propositions are as follows:

27. "Since defendant Lincoln Life Insurance Company and Foster and Son purchased said Sprowls note for $6500.00 and the vendor's and deed of trust lien reserved and retained by Sprowls to secure the payment of same for a valuable consideration paid, without notice of plaintiff's said claim or lien, they were subrogated to all rights, liens and remedies of defendant Sprowls, and were entitled to a judgment in their favor against the plaintiff Youngblood. (Under thirty-ninth Assignment of Error, Tr. page 50)."

28. "Since Harveson purchased said property for valuable consideration paid and Lincoln National Life Insurance Company and Foster & Son advanced their money to take up, renew and extend a valid and subsisting prior lien thereon, without notice of Youngblood's claim or lien, they were subrogated to such original purchase money and building liens, and were not affected by any claim or lien of Youngblood, and the judgment adverse to them is erroneous. (Under Thirty-ninth Assignment of Error, Tr. page 50.)"

The thirty-ninth assignment of error reads as follows: "The Court erred in rendering any judgment whatever against these defendants in that the defendant Q. A. Harveson in purchasing the property in controversy, and the Lincoln National Life Insurance Company and J. E. Foster and Son in making the loan thereon, took up, renewed and extended prior existing debts and liens thereon intended originally by the parties thereto to have been created and fixed thereon, and were therein and thereby subrogated to the rights,

liens, remedies and equities of the original holders of such liens upon said property."

We are somewhat doubtful as to whether the above propositions are sufficient to raise the issues here presented. However, we will give the plaintiffs in error the benefit of the doubt and pass on the assignment.

The deed of trust to the insurance company contains the following clauses:

"We hereby request and authorize the Lincoln National Life Insurance Company to advance any money necessary to satisfy the present owner or owners of any prior note or notes where a release or transfer of said note or notes may be executed by the owner or owners thereof, and we hereby agree that the said company, its successor or assigns may be subrogated to all the righs, liens, remedies, equities, superior title, interest in lands and benefits held, owned, possessed and enjoyed at any time by any owner or holder thereof. We further agree if it becomes necessary for said company to advance any sums greater than the amount for which the debt secured hereby is given, said advancement may be for the taking up vendor's lien, past due taxes, insurance, premiums, liens for labor or material, procuring deeds or any other instruments, to perfect the title in us as grantors, and this deed of trust shall secure such advancement. * * *

"The indebtedness hereby secured is in renewal and extension of one note for $6,500.00 dated February 14, 1927, executed by Q. A. Harveson, secured by vendor's lien retained in deed of even date therewith from F. V. Sprowls and wife, Etta B. Sprowls, to said Q. A. Harveson, and by deed of trust of even date therewith to A. C. Heath, Trustee, and it is expressly understood and agreed that the taking of this deed of trust shall in no way or manner waive, affect or impair the validity of the liens securing same, but any and all liens securing same shall remain in full force and effect until the final payment of the note hereby secured, and the said The Lincoln National Life Insurance Company, or any other owner or holder of the note hereby secured is hereby subrogated to all the liens title, interest and remedies thereunder."

█ As above stated, it was conclusively shown that the sale from Rogers et al. to Sprowls, the sale from Sprowls and wife to Harveson, and the loan by the insurance company were all consummated at the same time and as one transaction. It is also shown that the life insurance company in effect paid to Rogers et al. the consideration for the conveyance to Sprowls. At the time Youngblood contracted to do this work, and most of the time while it was going on, the title to the property stood on the record in the name of Rogers et al., and, so far as the record shows, Sprowls had no title thereto. It was necessary, in order for Sprowls to get title, that

his sale to Harveson be consummated, and in order for this to be done the loan by the life insurance company had to be obtained and closed. In other words, had the life insurance company not advanced the money to pay for the lot, title thereto would have remained in Rogers et al. We think under these circumstances the life insurance company is subrogated to the rights and equities of an original vendor, and holds a purchase-money lien.

█ It is contended by Youngblood that he had no notice of these matters. The record shows that Sprowls had no title to the lot at the time his contract was made and for some time thereafter, but that the title thereto was vested of record in Rogers et al. Youngblood was charged with notice of what the record showed, and therefore knew that Sprowls had no title of record. This certainly put him on inquiry, and charged him with notice of what the inquiry would have disclosed.

█ We think that the contentions that the insurance company should be subrogated to the mechanic's lien given by Sprowls and wife to Gunn should be overruled. This lien covered a different lot from the lot here involved. It is contended that this was a mistake, and that the lien was intended to cover lot 10. As between the parties this may be true, but there is no showing that Youngblood had any notice of such mistake. Also we think it is conclusively shown that this loan from Sprowls to Gunn was spurious and fraudulent and never intended to be binding on any one. Gunn was an employee of Sprowls. He never had any binding contract to furnish any material for improvements on this lot, but was merely an employee of Sprowls working by the day. It was understood at the time of making that he was not bound by his contract. The Gunn lien was for $12,000, and Quarles Company had full notice of the above facts. The Quarles Company admitted through its agent that the loan was made to Gunn, who was an employee of Sprowls, for $12,000, when there was no obligation on Gunn's part to do or to furnish anything, and that the Quarles Company took the transfer to same with full notice thereof.

For the error regarding the $2,500 purchase-money lien we recommend that the judgments of the Court of Civil Appeals and of the district court be both reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.