Sam C. NEWMAN, D/B/A Bowman Lumber Company, Appellant,

v.

R. A. COKER, Appellee.

No. 6714.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 10, 1958.

Cade & Bowlin, Lubbock, for appellant.

Vickers & Vickers, Lubbock, for appellee.

CHAPMAN, Justice.

After considering appellee's motion for rehearing the former opinion announced in this cause is withdrawn and this opinion is announced in lieu thereof.

This case involves priority of liens on Lot 8, Block 2, Ben Dixon subdivision, City of Lubbock, Lubbock County, Texas. The house, the construction of which gave rise to what appellee terms his contractual mechanic's and materialman's lien and appellant's claim under a constitutional and statutory materialman's lien is 2015 44th Street on the lot and block and within the subdivision and city above named. A vendor's lien is also involved in the priorities claimed. Sam C. Newman d/b/a Bowman Lumber Company is appellant and R. A. Coker is appellee.

Appellee Coker originated this case by a pleading in trespass to try title, for foreclosure of a vendor's lien acquired by assignment from Kline ﹒A. Nall and for foreclosure of a contractual mechanic's and materialman's lien acquired by assignment

from H. S. Dobbs. Cited as defendants were the named lumber company, Charles William Aydelotte and wife Erlene Aydelotte, Aubrey R. Anderson and J. B. Joiner. Both liens held by appellee Coker were alleged to be superior to any claims asserted by any of the defendants. Anderson and Joiner were named as defendants because they held judgment liens against Charles William Aydelotte. All defendants answered except Joiner but only the lumber company has appealed from the judgment of the court below holding title to be in the Aydelottes subject to certain liens: (1) that appellee Coker holds a first vendor's lien through assignment from Kline A. Nall securing a note in the amount of $2,075; (2) a valid mechanic's and materialman's lien, inferior only to the vendor's lien described above, securing a note in the principal sum of $7,000, dated February 9, 1955, originally payable to H. S. Dobbs, but assigned by Dobbs to Coker on February 21, 1955, and recorded on February 24, 1955; (3) that Sam C. Newman d/b/a Bowman Lumber Company, by virtue of agreements with the owner, Charles William Aydelotte, has a valid constitutional materialman's lien securing materials furnished by said company in the construction of the house on the property described and totaling the amount of $3,977.79, which is inferior to those asserted by Coker and described above; (4) and defendant Anderson holds a valid judgment lien inferior to all liens above described.

Appellant answered by a plea of not guilty, denied every allegation of appellee and pleaded it had a constitutional lien superior to any lien asserted by Coker. It also alleged it furnished materials for buildings located on various other properties owned by defendant Aydelotte and against which Coker either held title or lien rights; that appellee claimed an interest in all or a part of such properties and that he recognized the validity of appellant's liens insofar as the other property involved in this action; that it furnished materials during the time appellee had actual and constructive notice of such fact; that appellee stood by when legally required to speak and is now estopped from reaping the rewards of its improvements placed on the premises, from asserting the insufficiency of its lien and from asserting a prior lien.

In a cross-action appellant alleged that prior to February 17, 1955, it made a contract with Erlene Aydelotte and husband, Charles William Aydelotte, under the terms of which it was to furnish materials for the construction of a frame house on the property described and for which Aydelotte agreed to pay a reasonable market price; that July 15, 1955, it filed its materialman's lien evidencing its constitutional lien and that same is prior to Coker's liens, and prayed for foreclosure of its constitutional lien. In a supplemental answer appellant alleged it notified Coker of the materials furnished and that it would look to him for its money for said materials. The case was tried to the court and judgment rendered as aforesaid.

Aydelotte, at and prior to the period of time involved in the law suit was in the business of building and selling houses in the City of Lubbock. During February, March and April of 1955 Aydelotte entered into contracts with Lynch and Dobbs, contractors, to build five houses in the City of Lubbock for him at various locations and gave notes, secured by mechanic's and materialman's liens on each separate place to either Lynch or Dobbs, or both of them, which were then assigned by the contractors to Coker who furnished money for their construction. The lien on each house would then be released by Coker, after construction and upon the payment of his loan. The evidence indicates Coker's interest in the transactions was a $300 profit on each house as consideration for financing the construction and in its findings of fact the court so found.

In the process of the trial in the court below one of the attorneys referred to the case as a comedy of errors, a description

quite appropiate to the facts developed and which contributed to a record that has given this writer much concern.

The testimony of Aydelotte indicates that prior to any of the transactions involved herein he had, by verbal contract, purchased a number of lots from Kline A. Nall, constructed improvements on them, then at the time of the sale or at the time of securing a loan on the improved property paid off the purchase price of the lots. The record does not indicate how such transactions were financed during construction but does show that prior to February 9, 1955, Aydelotte had a verbal contract with Nall to purchase Lot 8 described above, the deed to be made when the purchase price was paid. Also, shortly prior to February 9, Aydelotte orally contracted with his wife's nephew, H. S. Dobbs, to build a house on the lot in controversy. Dobbs was also a son-in-law of Lynch, the other contractor who was building houses for Aydelotte at the same time the house on Lot 8 was under construction and it appears the two were working together on the five projects regardless of whose name appeared on the paper work incident thereto. On February 9, 1955, Aydelotte and wife, Erlene Aydelotte executed a note in the amount of $7,000 to Dobbs, secured by a mechanic's and materialman's lien on said lot, as consideration for the construction of a house thereon, the cost of which was not to exceed the amount of the note. Plans and specifications were furnished for the construction. There is no testimony that Dobbs ever checked the records to determine the owner of record of the lot on which he was building the house and it was completed in May, 1955, with the record title still in Nall. On February 21, 1955, Dobbs, before filing his lien of record, assigned the note and lien to appellee, Coker, for money with which to pay for the materials and labor of the construction and the lien was filed for record on February 24, 1955. Between the dates of February 24, 1955, and May 11, 1955, Coker advanced monies to Dobbs in the amount of $6,985

with which to pay for the construction of said house, with record title still in Nall. In March, 1956, Coker's attorney, in the process of examination of the abstract of title to said property, discovered that title to said property was in Kline A. Nall. A deed was prepared for Nall to convey the property to Aydelotte but instead of conveying Lot 8, as intended, he conveyed Lot 7 in the same block. This transaction took place on March 12, 1956, almost a year from the time of the completion of the house. Nall took a note in the amount of $2,075 from Aydelotte with a vendor's lien to secure its payment. Coker paid the $2,075, the record showing Aydelotte was insolvent at the time and had several judgments against him. Nall immediately transferred the note and lien to Coker.

About February 15, 1955, Bowman Lumber Company had an agreement with Aydelotte to furnish materials for the house in controversy. The record shows Aydelotte, following said agreement, furnished a letter to the lumber company requesting the materials later supplied. The lumber company furnished $3,977.79 worth of materials without ever as much as inquiring, much less checking the records to determine who had record title to the lot. During the trial of this case in the court below Nall executed a deed to Erlene Aydelotte to correct the mutual mistake of the transaction in which he had described Lot 7 when it should have been Lot 8. The record indicates he would be willing to have the name Charles William Aydelotte inserted into the deed as grantee later if the attorneys requested him to do so. Apparently the reason for transferring to Erlene Aydelotte was because of the judgments of record against her husband. The record showing the property as being the community property of the Aydelottes, the court having found it was not their homestead, and no question having been raised as to ownership being in the Aydelottes after said transaction we may safely assume that at the conclusion of the testimony in the trial court the legal title to the prop-

erty was in the Aydelottes subject to the various liens asserted.

The record also shows that appellant lumber company furnished the materials for four of the five houses under construction for Aydelotte at about the same time and that either Lynch or Dobbs, or both, were the contractors on the four houses. The materials were furnished under written orders from Aydelotte, the apparent owner, authorizing the company to make such deliveries on orders placed by Lynch or Dobbs and the lumber company was to furnish the owner, Aydelotte with copies of all invoices signed by Lynch or Dobbs, though the record shows they were not all signed. The mechanics' and materialmens' liens executed by Aydelotte in favor of Lynch or Dobbs as security for their constructing said houses were thereafter assigned to appellee Coker, the original dates of said instruments running from February 5, 1955 to April 9, 1955, inclusive, the one under consideration here having been executed on February 9, 1955.

The first question we shall discuss is whether the vendor's lien acquired by Coker in March, 1956, through assignment from the owner, Nall, is superior to all liens involved. In his requested findings the court below found:

"The proper legal description of the property in controversy is Lot 8, Block 2: Ben Dixon Subdivision to the city of Lubbock, Lubbock County, Texas, according to map or plat of record.

"Title thereto was vested in Kline A. Nall until March 12, 1956, when he deeded same to Charles William Aydelotte pursuant to an oral sale contract that had been in effect for about one year.

"Nall retained a vendor's lien to secure payment of purchase monies of $2,075.00, and transferred the note and lien to R. A. Coker about March 12, 1956, when Coker paid Nall $2,075.00.

"The deed and note above referred to, through mutual mistake described the wrong lot when originally executed, but corrected deed was executed by Nall during the trial, correctly describing the property. The note bears 6% interest and provides for 10% attorneys' fees."

Though Nall was not positive as to some of the details there was sufficient testimony in the record of probative value for the trial court to make the findings of fact above enumerated. Under this state of facts we believe the case of Harveson v. Youngblood, Tex.Com.App., 38 S.W.2d 781, 783, opinion approved by the Supreme Court, is clearly in point on the superiority of Coker's vendor's lien and is completely decisive of the question. That was a case in which a plumber, Youngblood installed certain fixtures, under an agreement with Sprowls, in a house being erected by Sprowls. It developed that title to the property at the time was in Rogers et al., just as title here was in Nall instead of Aydelotte, and the insurance company furnished the money with which to pay for the lot on which Youngblood had installed the plumbing just as Coker in our case furnished the money for the purchase by Aydelotte of the lot in question and took assignment of the vendor's lien for $2,075.00. Judge Critz, speaking for the court in the Youngblood case, said:

" * * * It is also shown that the life insurance company in effect paid to Rogers et al. the consideration for the conveyance to Sprowls. At the time Youngblood contracted to do this work, and most of the time while it was going on, the title to the property stood on the record in the name of Rogers et al., and, so far as the record shows, Sprowls had no title thereto. It was necessary, in order for Sprowls to get title, that his sale to Harveson be consummated, and in order for this to be done the loan by the life insur-

ance company had to be obtained and closed. In other words, had the life insurance company not advanced the money to pay for the lot, title thereto would have remained in Rogers et al. We think under these circumstances the life insurance company is subrogated to the rights and equities of an original vendor, and holds a purchase-money lien.

"It is contended by Youngblood that he had no notice of these matters. The record shows that Sprowls had no title to the lot at the time his contract was made and for some time thereafter, but that the title thereto was vested of record in Rogers et al. Youngblood was charged with notice of what the record showed, and therefore knew that Sprowls had no title of record. This certainly put him on inquiry, and charged him with notice of what the inquiry would have disclosed."

Aydelotte did not, at the time of the payment of the purchase price of the lot, have funds with which to make the payment, the record showing he was insolvent and had judgments of record against him. From the record in this case appellant certainly would have no rights to the property as against Nall and could not have been placed in any worse position by the transaction that brought the property into the name of Aydelotte, subject to the note and vendor's lien executed in consideration of the title passing from Nall into the hands of those to whom the lumber company had furnished the materials constituting the basis of their claims herein. We therefore believe, and so hold, that Coker is subrogated to the rights of Nall, the original vendor, and that the court below correctly held the vendor's lien acquired through the payment of the purchase price of the lot was superior to any of the other asserted liens.

The next question that presents itself for consideration is which of the other two liens is superior, the lien claimed by the lumber company under its agreement with the apparent owner, Aydelotte, to furnish materials for the house, or the lien which originated with the execution of the $7,000 note from the Aydelottes, as apparent owners, to Dobbs, the contractor, and assigned by Dobbs to Coker for funds with which to pay for the labor and materials incident to construction. We have referred to Aydelotte as apparent owner because he had only a verbal contract to purchase, apparently known only to him and Nall, during the time of all the transactions giving rise to this suit.

Appellant contends it is entitled to its lien under provisions of Article 16, Section 37 of the Constitution of Texas, Vernon's Ann.St., which provides:

"Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

It also contends said lien was perfected by filing within the statutory period.

In accordance with the direction of the constitution just quoted the Legislature has adopted Article 5452 to 5472c inclusive, which articles are found in Chapter 2, Vernon's Ann.Civ.St., titled "Mechanics, Contractors and Materialmen."

Article 5452 provides that "Any person or firm, lumber dealer or corporation, artisan, laborer, mechanic or subcontractor who may labor or furnish material, machinery, fixtures or tools: (a) to erect or repair any house, building or improvement whatever * * * upon complying with the provisions of this Chapter shall have a lien upon such house, building, fixtures, improvements * * * to secure payment for the labor done, lumber, materi-

al, machinery or fixtures and tools furnished for construction or repair."

Article 5453 provides the lien mentioned in Article 5452 may be fixed and secured in the following manner: "1. Every original contractor, within four months, and every journeyman, day laborer, or other person, within three months after the indebtedness accrues, shall file his contract in the office of the County Clerk of the County where the property is situated to be recorded in a book kept by the county clerk for that purpose. * * *

"3. Within ninety days after such indebtedness accrues, each person, firm or corporation who furnished material to or performed labor for a contractor * * * to construct or repair a house * * * shall give written notice to the owner of such house * * * of each and every item furnished and showing how much there is due and unpaid on each bill of lumber or material furnished * * * and shall file with the county clerk of the county in which such property is located * * * an itemized account of his or their claim to be recorded by such clerk in a book kept for that purpose."

Article 5459 provides "The lien herein provided for shall attach to the house * * * for which they were furnished * * * in preference to any prior lien * * * upon the land upon which the houses * * * have been put * * * ; provided, any lien * * * on the land or improvement at the time of the inception of the lien herein provided for shall not be affected thereby * * *."

Article 5467 provides " * * * When material is furnished, the indebtedness shall be deemed to have accrued at the date of the last delivery of such material, unless there is an agreement to pay for such material at a specified time."

Based upon the finding that appellee Coker was a bona fide purchaser for value before maturity, without notice of any claims asserted by the lumber company

for materials furnished, the trial court held his lien was superior to the lumber company lien. We believe the great preponderance of the evidence is contrary to the finding of the learned trial court in this respect, as is the law applicable thereto.

■ "Bona fide purchaser" has been held to be such a purchaser as acquires apparent legal title to property in good faith for a valuable consideration and without actual or constructive notice of an outstanding equity or an adverse interest or title. Plumb v. Kleimann, Tex.Civ.App., 234 S.W.2d 444, 447.

■ With respect to what constitutes notice our courts have said, "In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. Means of knowledge with the duty of using them are in equity equivalent to knowledge itself." Tomlinson v. Higginbotham Bros. & Co., Tex.Civ.App., 229 S.W.2d 920, 922. The court in the case just cited also said: "The law is well settled that while a building is under construction, any person who takes a mortgage thereon does so with notice of any mechanics' or materialmen's liens. It is his duty to make inquiry as to whether or not labor has been performed or material furnished within the statutory period for filing liens for which payment has not been made." When these rules are applied to the instant case we have to say that appellee was not an innocent purchaser for value without notice.

■ The question then presents itself as to whether the materialman, appellant lumber company, perfected its constitutional lien. If we understand the terms used by the courts a constitutional lien such as the one acquired by the lumber company also becomes a statutory lien if perfected in accordance with the statutes providing for enforcement of the con-

stitutional lien. It is without controversy that the lumber company within a period of less than ninety days from the time of delivery of the last materials filed its lien with the County Clerk of the county. It is also without controversy that such lien was not at such time itemized by showing each item and the amount of same but under the facts of this record we do not believe, as to Coker, an itemization was necessary. The great weight and preponderance of the evidence is to the effect that appellant, through its manager, and appellee discussed the amounts due on the houses under construction and said discussion took place within the period prior to ninety days after the last materials were furnished. A fair interpretation of appellee's own testimony reveals that he knew the amounts against the houses. The amount of the lumber company's claim in this case has never been disputed nor has the fact that materials furnished were used in the construction of the property in question. Our courts do not require useless things to be done. Under the facts of this case itemization could have added nothing to the protection of appellee. Our courts have held that the lien created under Article 16, Section 37 does not depend upon the statute, and the legislature has no power to affix to that lien conditions of forfeiture. It may, under the constitution, provide means for enforcing the lien, and, in doing so, may prescribe such things to be done as may be deemed necessary for the protection of the owner or purchasers of such property, * * * a limitation upon the time for the enforcement of such lien, and such other things as pertain to the remedy. Strang v. Pray, 89 Tex. 525, 35 S.W. 1054. Our Supreme Court has also said, "Within the period of time allowed by the statute for the lien to be fixed by being recorded, we think every person dealing with the property is charged with notice of the existence of the lien, without evidence of the existence of actual notice. Were it otherwise, the provision of the constitution creating the lien, as the result of the trans-

action in which it originates, would be be disregarded." Keating Implement & Machine Co. v. Marshall Electric Light & Power Co., 74 Tex. 605, 12 S.W. 489, 490.

In 1887 our Supreme Court in the early case of Thomas Trammell & Co. v. Mount, 68 Tex. 210, 4 S.W. 377 held, in construing Article 3177, now Article 5459 as amended, that the lien though not fixed before record of the contract or bill of particulars, when it is fixed it relates back to the time when the work was done or the materials furnished, and hence takes precedence over all claims to the property improved which have been fastened upon it since that time. The article at that time had the word "accrual" in it. In 1889 the Legislature substituted for the word "accrual" the word "inception", making the language therein read " * * * provided, any lien, encumbrance or mortgage [existing] on the land or improvement at the time of the inception (formerly accrual) of the lien herein provided for shall not be affected thereby."

Following the substitution of the word "inception" for the word "accrual" in our statutory law on priority of liens the Supreme Court of Texas, speaking through Judge Brown in Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652, 30 L.R.A. 765, reasoned that the legislature, by making such substitution intended to change the rule of "relation back" as announced in the Thomas Trammell & Co. v. Mount case, supra, and then held that the mechanics' and materialmen's liens "related back" and had their inception as of the date of the contract between the builders, Oriental Hotel Co., and the contractor, Griffiths, rather than the date upon which the labor was performed or the material furnished. The same Judge Brown a few years later in Sullivan v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S.W. 307, in speaking for our Supreme Court indicated said court realized the danger of its holding in the Oriental Hotel Co. case and refused to extend to any extent the doctrine announced therein. But so far as we have been able to determine

the Supreme Court of Texas has never said the holding in the Oriental Hotel Co. case is not the law, but has been able to distinguish other cases from it on the facts. In a very recent case our Supreme Court has said "As we understand the rule of the Oriental Hotel Co. case it is a comparatively narrow one and its holding is strictly confined to a set of facts similar to that disclosed in the opinion. The controlling feature or circumstance of the case is the existence of a general contract between an owner on the one hand and a building contract on the other." McConnell v. Mortgage Investment Co. of El Paso, Tex., 305 S.W.2d 280, 283.

■ In our case we have a general contract between the owner, Aydelotte, and the building contractor, Dobbs. We also have contentions of priority of mechanics' and materialmen's liens. On the one hand is a contractual mechanics' and materialman's lien held by appellee Coker. On the other hand is the constitutional, and we think also statutory mechanics' and materialman's lien held by appellant lumber company. If we understand the holding of the Supreme Court in the Oriental Hotel Co. case all mechanics' and materialmen's liens complying with the statutes providing for the enforcement of the liens created under Art. 16, Sec. 37 of the Constitution have their inception and relate back to the first contract. Texas Law Review, Vol. 2, page 78, last line, paragraph 3.

As applicable to our case this would be the contract of February 9, 1955, between the apparent owner, Aydelotte, and the contractor, Dobbs, for the construction. We believe the facts of our case, where we have a contract between the owner, who furnished plans and specifications, and the building contractor, are so closely analogous to the facts of the Oriental Hotel Co. case that it does not require any extension of the doctrine announced therein for us to apply the rule there announced to our own case. If we are correct in this respect the materialman's lien of the lumber company

would relate back and have its inception on February 9, 1955, the date of the first contract. If this applies to all mechanics' and materialmen's liens the same inception date would apply to the Coker contractual mechanics' and materialman's lien.

■ We also believe the case of McConnell v. Frost, Tex.Civ.App., 45 S.W.2d 777, is applicable to our case. That case had mechanics, materialman and the building contractor's assignee who furnished finances all contending for priority, just as we have in the instant case. The court there held all the liens on the building of equal dignity, they having all been acquired in the construction of one improvement. We therefore hold that the lumber company's lien and the Coker mechanics' and materialman's lien are of equal dignity with each other.

■ Appellant raises the question in his brief that Aydelotte was not such an owner as to acquire a materialman's lien under the constitution because legal title was in Nall during all the time the materials were being furnished. In William Cameron & Co. v. Trueheart, Tex.Civ.App., 165 S.W. 58, 60, the court held that within the purview of mechanic's and materialman's liens a purchaser of land under a verbal executory contract, which was subsequently carried out by the giving of a deed was the "owner." In its opinion the court distinguishes those cases in which a cursory glance of the holding might indicate a contrary rule to the one just stated by saying:

"Those decisions are to the effect that a party in possession of land, under an executory contract to purchase the same, but who does not comply with his contract, fails to pay the purchase money, and in consequence thereof never receives a conveyance of the land, is not the owner of same, and therefore cannot incumber it with a mechanic's or materialman's lien. Such we understand to be the law. But in the instant case Terry did not breach his contract

with the land company. On the contrary, he fully complied with the same, and received through Norman what was intended by said company to be a deed to the lots which he had contracted to purchase."

At any rate, Coker is not in a position to complain of Aydelotte's not being an owner since it is only through Aydelotte that he acquired his contractual mechanic's and materialman's lien. If he was not the owner for the purpose of the lumber company lien then he would not be the owner for the purpose of the Coker lien.

Because of the complicated set of facts, the careless manner in which all parties involved herein transacted their business, and because of the myriad cases construing Article 16, Section 37 of the Constitution of Texas and the statutes passed for its enforcement, this case has had much study. The fact that the courts have not always been consistent in their constructions of the constitutional and statutory law here involved or as specific as they might have been in some of their statements has not made our task any easier. The evidence indicates the contractors, Lynch and Dobbs absconded to California with some of the funds that should have been applied to the payment of labor and materials used in the five houses they were building for Aydelotte. When the lumber company and Coker realized the four houses in which they were jointly interested were not going to pay out they worked together for several months in making the best of a bad situation. In addition to the law we have cited and quoted we feel an equitable disposition is to hold that the two liens here under discussion are of equal dignity and second only to the vendor's lien above discussed. Accordingly, the judgment of the court below is affirmed wherein it held the Coker vendor's lien of first dignity and superior to any other lien. The judgment of the trial court is reversed and rendered wherein it held the Coker mechanics' and material-

men's lien superior to the lumber company lien. We hold said two liens are of equal dignity. Both parties having prevailed in part and lost in part the costs are adjudged equally between them.